NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JENELL A. BROWN, | |
| Plaintiff, | CIVIL NO. 04-5576 (GEB) |
| v. | |
| CITY OF TRENTON, et al., | **MEMORANDUM OPINION** |
| Defendants. | |

**BROWN, Chief District Judge**

This matter comes before the Court upon Defendant Officer Civale's (hereinafter "Defendant") Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56 [Docket Entry #9]. The Court, having considered Defendant's submission[1] and having decided this matter without oral argument pursuant to Fed. R. Civ. P. 78, and for the reasons discussed below, will grant Defendant's Motion for Summary Judgment.

**I.    BACKGROUND**

This civil action arises from the events of a traffic stop in the morning hours of November 5, 2002. On that date, Jenell A. Brown (hereinafter "Plaintiff"), who was transporting her children and grandchildren to various schools and day care facilities prior to the beginning of her work shift at Golden Currency as a check teller, was pulled over by Defendant for Plaintiff's failure to wear a seat belt. (Defendant's Summary Judgment Motion, Exhibit C, pp. 11, 20-21;

---

[1] Plaintiff has not filed any opposition to Defendant's Summary Judgment Motion. All information regarding facts of events relevant to Plaintiff's civil action are taken from Plaintiff's Complaint, transcripts of Plaintiff's deposition, and transcripts of the state court criminal trial previously conducted in this matter.

Exhibit G, p. 8).

The traffic stop began normally.  Plaintiff pulled over and Defendant approached Plaintiff, requesting to see Plaintiff's driver license, registration and proof of insurance.  (Exhibit C, p. 24).  At the time of the traffic stop, only Plaintiff and one daughter were in the vehicle, as the other children and grandchildren had been previously dropped off.  (Id. at pp.'s 18-19).  In an effort to comply with Defendant's request for Plaintiff's credentials, Plaintiff reached for her pocket book and at that point realized that she had failed to bring it with her that morning.  (Id. at p. 24).  Plaintiff informed Defendant of that fact, and Defendant thereafter went back to his police vehicle, where he conducted a computer search of Plaintiff's vehicle and determined that it was unregistered.  (Id. at p. 27).  Defendant again exited his police vehicle and returned to Plaintiff to inform her that her car was coming up on the computer as unregistered.  (Id.).  Defendant informed Plaintiff that without proof of insurance, her car would have to be towed.  (Id. at p. 28).  Plaintiff then asked Defendant if she could call her sister to retrieve her purse and bring it to her.  (Id.).  Defendant stated that if she could somehow obtain the information requested prior to the arrival of the tow truck, that he would not have the car towed.  (Id.; Exhibit G, p. 22).  The tow truck was summonsed, and Plaintiff went to a nearby home, asked for and received permission to utilize the resident's telephone, called her sister, and asked her to pick up and bring Plaintiff's pocketbook to Plaintiff.  (Exhibit C, p. 29; Exhibit G, p. 23).

Thereafter, Plaintiff exited the residence, returning to the area of her car.  (Id.).  Accounts of events given by Plaintiff and Defendant vary widely at this point of the chronology, however, at some point very soon after Plaintiff called her sister, the tow truck arrived to tow Plaintiff's car.  (Exhibit C, p. 43; Exhibit G, p. 25).  Plaintiff's sister had not yet arrived with Plaintiff's

pocket book.  Whether purposely or not, Plaintiff was in a position between the tow truck and her car that prevented her car from being towed.  (Exhibit C, pp. 44, 46; Exhibit G, pp. 25-26).

Plaintiff contends that Defendant then came up behind Plaintiff and pushed her onto her car.  (Exhibit C, p. 49).  Plaintiff alleges that Defendant thereafter informed Plaintiff that she was under arrest.  (Id. at p. 54).  Defendant then twisted Plaintiff's arm behind her back, according to Plaintiff, and proceeded to knee and push her.  (Id. at p. 55).  Plaintiff further alleges that Defendant then placed a handcuff on the arm that was behind Plaintiff's back.  (Id. at p. 56).  Plaintiff states that as a result of the altercation, her knee was injured, requiring subsequent surgery.  (Id. at p. 83).  Plaintiff further states that at no time did she attempt to resist arrest, or physically assault Defendant during the altercation.  (Id. at pp. 61-62).

Defendant counters by alleging that when he realized that Plaintiff was standing between the tow truck and her car, preventing said car from being towed, that he approached Plaintiff and asked her to move.  (Exhibit G, p. 24).  When she refused, Defendant asserts, he put his hand on Plaintiff's back and attempted to guide Plaintiff to the curb.  (Id. at p. 25-26).  Defendant next asserts that Plaintiff then became agitated and verbally confrontational.  (Id.).  At that point, Defendant argues, he told Plaintiff that she was under arrest.  (Id.).  Defendant thereafter forced Plaintiff face-down on the trunk of Plaintiff's vehicle.  (Id. at p. 27).  Defendant then attempted to handcuff Plaintiff.  (Id. at p. 41-42).

Defendant argues that Plaintiff began to struggle to get free of Defendant, and in the process physically harmed Defendant by kicking him.  (Id. at p. 35-36).  As Defendant continued to hold Plaintiff face-down on the trunk of her car attempting to handcuff her, Plaintiff's daughter jumped on Defendant's back.  (Id. at p. 42; Exhibit C, p. 63).

Continuing to hold Plaintiff down, with Plaintiff's daughter still on his back, Defendant pressed the emergency button on a radio on his person. (Exhibit G, p. 43). Before assisting law enforcement arrived, Defendant asserts that he was either able to "shake" Plaintiff's daughter off of his back or she voluntarily got off his back, and thereafter successfully handcuffed Plaintiff. (Id. at p. 44).

Plaintiff was thereafter brought to police headquarters and processed. (Defendant's Summary Judgment Brief, p. 4). On that same day, a criminal complaint was filed against Plaintiff. (Id.). The complaint contained four counts, including: resisting arrest, in violation of N.J.S.A. 2C:29-2A; improper behavior, in violation of N.J.S.A. 2C:33-3A; obstruction of justice, in violation of N.J.S.A. 2C:29-1; and aggravated assault, in violation of N.J.S.A. 2C:12-1B(1)(A). (Exhibit E). Thereafter, Plaintiff filed a criminal complaint against Defendant alleging simple assault, in violation of N.J.S.A. 2C:12-1A(1). (Exhibit F, p. 2).

On June 18, 2004 and July 9, 2004, before the Honorable Roger Haley, J.M.C., both criminal complaints were jointly tried. (Exhibit G, H). The trial was a bench trial. Defendant, Plaintiff and the tow truck driver testified. At the end of the trial, on July 9, 2004, Judge Haley issued his ruling. (Exhibit H). The judge found that Plaintiff's seatbelt was disengaged, that she failed to possess the necessary driving credentials, that her vehicle registration had previously expired, and that she had committed obstruction of justice. (Id.).

The judge further found that although Defendant had used force to obtain control over Plaintiff, that the force he exercised was nevertheless reasonable under the circumstances. (Id.). The judge therefore found Defendant not guilty of simple assault. (Id.).

Plaintiff thereafter appealed, and said appeal was dismissed for timeliness on November 10, 2005. (Exhibit I).

Plaintiff filed the instant federal civil action on November 5, 2004, asserting causes of action against Defendant, the City of Trenton Police Officer, James B. Golden, Jr., Director, the Trenton City Police, the City of Trenton and Does One through Five. (Plaintiff's Complaint). As pertinent to Defendant, the Complaint alleges causes of action for false arrest, assault and battery, malicious prosecution and abuse of process and conspiracy under 42 U.S.C. § 1983.

## II.     STANDARD OF REVIEW

A party seeking summary judgment must "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Orson, Inc. v. Miramax Film Corp., 79 F.3d 1358, 1366 (3d Cir. 1996); Healy v. New York Like Ins. Co., 860 F.2d 1209, 1219, n.3 (3d Cir. 1988), cert. denied, 490 U.S. 1098 (1989); Hersh v. Allen Prod. Co., 789 F.2d 230, 232 (3d Cir. 1986). The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986) (noting that no issue for trial exists unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict in its favor). In deciding whether triable issues of fact exist, the Court must view the underlying facts and draw all reasonable inferences in favor of the non-moving party. See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Pennsylvania Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995).

Rule 56(e) of the Federal Rules of Civil Procedure provides, in relevant part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e). The rule does not increase or decrease a party's ultimate burden of proof on a claim. Rather, "the determination of whether a given factual dispute requires submission to a jury must be guided by the substantive evidentiary standards that apply to the case." Anderson, 477 U.S. at 255-56.

Under the rule, a movant must be awarded summary judgment on all properly supported issues identified in its motion, except those for which the non-moving party has provided evidence to show that a question of material fact remains. See Celotex, 477 U.S. at 324. Put another way, once the moving party has properly supported its showing of no triable issue of fact and of an entitlement to judgment as a matter of law, for example, with affidavits, which may be "supplemented . . . by depositions, answers to interrogatories, or further affidavits," id., "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586, n.12; see also Anderson, 477 U.S. at 247-48 ("[B]y its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion . . . the requirement is that there be no *genuine* issue of *material* fact.") (emphasis in original).

What the non-moving party must do is "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324: see also

6

Lujan v. National Wildlife Fed., 497 U.S. 871, 888 (1990) ("The object of [Rule 56(e)] is not to replace conclusory allegations of the complaint . . . with conclusory allegations of an affidavit."); Anderson, 477 U.S. at 249; Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992) ("To raise a genuine issue of material fact . . . the [non-moving party] need not match, item for item, each piece of evidence proffered by the movant" but rather must exceed the 'mere scintilla' threshold.), cert. denied, 507 U.S. 912 (1993).

Where the facts are not in dispute and the issues contested in a summary judgment motion are legal issues, the Court may proceed to decide the legal issues and rule accordingly on the summary judgment motion. Ingram v. County of Bucks, 144 F.3d 265, 267 (3d Cir. 1998) (holding that when there is no genuine issue of material fact in dispute and the issue facing the court is a question of law, it can properly be resolved on summary judgment).

Such is the case here. Plaintiff has not responded to Defendant's Summary Judgment Motion. She has not, therefore, gone beyond the pleadings to show a genuine issue for trial. The state trial judge heard the evidence during the state trial and made specific findings. Those findings are to be given preclusive effect. See Allen v. McCurry, 449 U.S. 90 (1980) (finding that once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case, including subsequent § 1983 suits); see also Gardner v. Surnamer, 1985 WL 2617 (E.D.Pa. 1985) ("Where a question of fact essential to the judgment is actually litigated and determined by a valid and final judgment, the determination is conclusive between the parties in a subsequent action on a different cause of action."); Sibert v. Phelan, 901 F.Supp. 183 (D.N.J. 1995) (finding that preclusion arguments are appropriate for resolution on motions for summary

judgment).

As there is no genuine issue of material fact in dispute and as the issues facing this Court are a matter of law, this Court may properly resolve said issues in the instant motion. Ingram at 267.

### III. DISCUSSION

Defendant Officer David Civale now moves for summary judgment to dismiss all pending counts of Plaintiff's Complaint against him. Defendant supports his motion by asserting that Plaintiff is collaterally estopped from bringing this civil action as her current claims have already been previously adjudicated, or in the alternative, that Defendant is entitled to qualified immunity.

#### A. Collateral Estoppel

Defendant argues that Plaintiff is collaterally estopped from bringing the instant civil action as the issues currently raised were previously litigated and adjudicated at the state court level.

Collateral estoppel and res judicata are preclusion principles that bind federal courts under the Full Faith and Credit statute codified under Title 28, United States Code, Section 1738. Section 1738 provides, in relevant part:

> The . . . judicial proceedings of any court of any . . . State . . . shall have the same full faith and credit in every court within the United States and its Territories and Possession as they have by law or usage in the court of such State, Territory or Possession from which they are taken.

Collateral estoppel and res judicata are related doctrines. Allen v. McCurry, 409 U.S. 90 (1980). Under res judicata, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." McCurry

at 414 (citing Cromwell v. County of Sac, 94 U.S. 351 (1876)); Edmundson v. Borouh of Kennett Square, 4 F.3d 186, 189 (3d Cir. 1993).  Res judicata requires three factors: (1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies, and (3) a subsequent suit based on the same cause of action.  Board of Trustees v. Centra, 983 F.2d 495, 504 (3d Cir. 1992).  Res judicata cannot apply when, as here, the first action is criminal and the second action is civil.  Hernandez v. City of Los Angeles, 624 F.2d 935, 937 (9th Cir. 1980); Sibert v. Phelan, 901 F.Supp. 183, 186 (D.N.J. 1995).

Under collateral estoppel, "once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case."  Id. (citing Montana v. United States, 440 U.S. 147 (1979)).  Collateral estoppel will apply to those circumstances where "(1) the identical issue was decided in a prior adjudication; (2) there was a final judgment on the merits; (3) the party against whom the bar is asserted was a party or in privity with a party to the prior adjudication; and (4) the party against whom the bar is asserted had a full and fair opportunity to litigate the issue in question."  Board of Trustees of Trucking Employees of North Jersey Welfare Fund, Inc. v. Centra, 983 F.2d 495, 505 (3d Cir. 1992).  Additionally, the issue or issues upon which preclusion is sought must have been "distinctly put in issue and directly determined adversely to the party against which estoppel is asserted."  Wheeler v. Nieves, 762 F.Supp. 617 (D.N.J. 1991) (quoting New Jersey-Philadelphia Presbytery of the Bible Presbyterian Church v. New Jersey State Board of Higher Education, 654 F.2d 868, 876 (3d Cir. 1981)).  However, collateral estoppel does apply "in cases in which a convicted defendant sues the government on a claim that is inconsistent with facts established by the conviction."  Wright, Miller & Cooper, Federal

9

Practice and Procedure: Jurisdiction § 4474; Sibert v. Phelan, 901 F.Supp. 183, 186 (D.N.J. 1995).

Both doctrines serve to relieve parties "of the costs and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." Id. Further, both doctrines are applicable to § 1983 claims. Allen v. McCurry, 449 U.S. 90, 97 (1980). However, because res judicata cannot be applied as the prior state action was criminal in nature, Defendant is limited to a collateral estoppel claim of preclusion.

Here, the Court shall grant Defendant's collateral estoppel claim. It is evident that Plaintiff asserted her same version of the facts in her previous criminal complaint as she asserts in her present civil complaint. Plaintiff's version of the facts were rejected by the state trial judge during the state criminal trial. As such, this Court must afford those previous state court findings full faith and credit. Wheeler v. Nieves, 762 F.Supp. 617, 626 (D.N.J. 1991) ("In the case of a criminal conviction based upon a jury verdict of guilty, issues which were essential to the verdict must be regarded as having been determined by the judgment."); Sibert v. Phelan, 901 F.Supp. 183, 187 (D.N.J. 1995) (holding that a previous criminal trial before a judge instead of a jury "has never been a bar to the assertion of issue preclusion [collateral estoppel]").

As the underlying facts are no longer capable of dispute, there was a final adjudication on the facts, both parties to the instant civil action were parties in the previous state criminal action, and the issues of fact to support the instant civil action are the same as the issues of fact previously adjudicated in state trial court, Plaintiff is collaterally estopped from bringing this civil action.

### B.     Qualified Immunity

Assuming, *arguendo*, that Plaintiff was not collaterally estopped from bringing the civil action at bar, Defendant nevertheless cannot be liable under the doctrine of qualified immunity.

"The doctrine of qualified immunity 'hold[s] that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Doe v. County of Centre, P.A., 242 F.3d at 453-54 (3d Cir. 2001) (quoting Harlow v. Fitgerald, 457 U.S. 800, 818 (1982)).  In determining whether a defendant is immune from suit, the Court must determine i) whether the plaintiff had alleged a violation of her statutory or constitutional right(s); ii) whether the right(s) alleged to have been violated was clearly established in the existing law at the time of the violation; and iii) whether a reasonable official should have known that the alleged action violated the plaintiff's right(s).  See id. at 454 (quoting Rouse v. Plantier, 182 F.3d 192, 196-97 (3d Cir. 1999)); see also Michaels v. New Jersey, 222 F.3d 118, 121 (3d Cir. 2000) (citations omitted).  The determination of whether a defendant is entitled to a defense of qualified immunity is a question of law for the Court to decide.  See Michaels, 222 F.3d at 121 (citation omitted).

Here, taking as true Plaintiff's factual allegations in her Complaint, clear implications of constitutional violations which were firmly established in existing law at the time of said violations exist, satisfying prongs one and two of the analysis.  However, in contemplation of prong three, this Court must consider whether Defendant's actions were objectively reasonable.

Specifically, even if a violation of a clearly established constitutional right was found by either a court or a jury, Defendant would be entitled to qualified immunity if, in light of the

11

circumstances and what was known to the officer at the time of the alleged violation, a reasonable officer could have believed that his conduct was lawful. Good v. Dauphin County Social Services for Children and Youth, 891 F.2d 1087, 1092 (3d Cir. 1989). Put another way, if reasonable officers could believe that a certain course of conduct is unlawful but other reasonable officers could believe that the conduct was lawful, qualified immunity attaches. In re City of Philadelphia Litigation, 49 F.3d 945, 961 n. 14 (3d Cir. 1994). Therefore, the test for qualified immunity is not whether a reasonable officer could have believed that the conduct in question was unlawful, as this places a heavier burden on the officer than is appropriate, but rather, the officer in entitled to qualified immunity if a reasonable officer could have believed that, under the circumstances at that time, the conduct would be lawful. Id.; Mellott v. Heemer, 161 F.3d 117, 121 (3d Cir. 1998). This clarification of prong three of the qualified immunity standard was an effort by the courts to recognize the inevitability that government officials may, in some cases, reasonably but mistakenly conclude that their actions comport with federal law. Orsatti v. New Jersey State Police, 71 F.3d 480, 483 (3d Cir. 1995). As such, the intent of the qualified immunity standard, as established by the courts, is to "give ample room for mistaken judgments . . . by protecting all but the plainly incompetent or those who knowingly violate the law." Hunter v. Bryant, 502 U.S. 224, 229 (1991).

      In the case at bar, the Court finds that Defendant's actions were objectively reasonable. As held by the state trial judge, at a certain point during the traffic stop, Plaintiff became irate and began to exhibit hostile behavior. When Defendant attempted to calm Plaintiff down, Plaintiff, with the aid of her daughter, began to physically accost Defendant. Therefore, Defendant's actions, which were limited to attempting to physically control Plaintiff in order to

place her under arrest, were irrefutably reasonable, both subjectively and objectively.

And as previously stated, this Court is required to give preclusive effect to the factual findings of the state trial judge, which findings were supported by a fully litigated underlying case in which testimony was given by both Plaintiff and Defendant, as well as an independent witness. Based on the transcripts of the state trial, this Court concurs with the findings of the state trial judge. Defendant's actions at the time of the traffic stop were reasonable.

As such, Defendant is protected from all claims alleged against him in Plaintiff's civil action as he is entitled to qualified immunity. Capone v. Marinelli, 868 F.2d 102, 106 n. 6 (3d Cir. 1989) (citing Pierson v. Ray, 386 U.S. 547, 557 (1967) (holding that qualified immunity covers civil liability claims including § 1983 and common law torts and that police officer sued under § 1983 for false arrest are protected under qualified immunity).

### IV.   CONCLUSION

For the foregoing reasons, Defendant Officer Civale's Motion for Summary Judgment [Docket Entry #9] shall be GRANTED.

 s/Garrett E. Brown, Jr.
**HONORABLE GARRETT E. BROWN, JR
CHIEF UNITED STATES DISTRICT JUDGE**

Dated: June 19, 2006